**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EULA M.,                             )
                                     )
            Plaintiff,               )
                                     )        No. 20 CV 4284
    v.                               )
                                     )        **Magistrate Judge Jeffrey I. Cummings**
KILOLO KIJAKAZI, Acting              )
Commissioner of Social Security,[1]  )
                                     )
            Defendant.               )

**MEMORANDUM OPINION AND ORDER**

Claimant Eula M. ("Claimant") brings a motion to reverse the decision of the

Commissioner of Social Security (the "Commissioner") to deny her claims for Disability

Insurance Benefits ("DIBs"). The Commissioner filed a response to Claimant's motion seeking

to uphold the prior decision to deny benefits. The parties have consented to the jurisdiction of

the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to

hear this matter pursuant to 42 U.S.C. §405(g). For the reasons stated below, Claimant's motion

to reverse the Commissioner's final decision, (Dckt. #14), is granted, and the Commissioner's

request to affirm the decision, (Dckt. #21), is denied.

**I.      BACKGROUND**

    **A.      Procedural History**

Claimant is a decorated United States Army veteran who served in Desert Shield and

Desert Storm and was honorably discharged in 2004 after twenty-one years of service.

(Administrative Record ("R.") 507). On June 12, 2014, she filed for DIBs, alleging disability

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

beginning May 19, 2013, due to post-traumatic stress disorder ("PTSD"), migraine headaches, knee pain, and lower-back pain. (R. 15, 1235). Claimant's application was denied initially and upon reconsideration. On March 29, 2017, following a hearing, Administrative Law Judge ("ALJ") Kathleen Kadlec issued a written decision denying Claimant's application for benefits. (R. 12-40). The Appeals Council denied review, and Claimant appealed her case to this Court, (Case No. 17 cv 6669).

On May 20, 2019, this Court reversed the ALJ's decision and remanded the case for further consideration. *See Eula M. v. Berryhill*, No. 17 C 6669, 2019 WL 2173790 (N.D.Ill. May 20, 2019); (R. 1336-1358). This Court held that a remand was required because the ALJ's RFC assessment and evaluation of Claimant's symptoms were not supported by substantial evidence. (R. 1344-1357). Among other things, the Court found that the ALJ: (1) failed to explain how she concluded that Claimant would be able to sit, stand, or walk up to six hours in an eight hour work day as is required for "light work," (*see* 20 C.F.R. §404.1567(b); R. 1345-46, 1350); (2) summarized most of the medical record regarding Claimant's knee and back complaints without providing an appropriate explanation of how the evidence – in particular, Claimant's x-rays and reports[2] – supported her conclusions regarding those conditions, (R. 1347); (3) failed to explain and reconcile her finding that Claimant could engage in "heavy/very heavy" work in 2014 – which would have required Claimant to be able to lift and carry items weighing at least 100 pounds, (20 C.F.R. §404.1567(d) and (e)) – with her finding that Claimant was only capable of "light work" in 2017 (R. 1350); and (4) failed to properly account for a July 1, 2016 physician's

---

[2] These records included a December 2015 x-ray showing that Claimant had moderate arthritic changes in both of her knees and a June 2015 MRI of the lumbar spine showing an L4/L5 disc bulge with "advanced degenerative disc changes" of L5/S1. (R. 1349).

2

report issued for the Veterans Administration, which found that Claimant had a moderate disability of the left knee, (R. 1351-53).

On September 16, 2019, the Appeals Council entered an order remanding the case for further administrative proceedings. (R. 1367). ALJ Kadlec held a supplemental hearing, at which Claimant and a vocational expert testified, and again denied benefits in a written decision dated March 24, 2020. (R. 1235-1253, 1261-1290). Claimant subsequently exhausted her administrative remedies, leaving the decision of the ALJ as the final decision of the Commissioner. This action followed.

**B.    The Social Security Administration Standard to Recover Benefits**

To qualify for disability benefits, a claimant must demonstrate that she is disabled, meaning she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an

acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month durational requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered disabled and no further analysis is required. If a listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), meaning her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If she cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given her RFC, age, education, and work experience. If such jobs exist, the individual is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

**C.  The Pertinent Evidence Presented to the ALJ at the Remand Hearing.**

Again, Claimant seeks DIBs due to limitations stemming from PTSD, migraine headaches, knee pain, and lower-back pain. The Court will recap the portion of the evidence

before the ALJ that is pertinent to the physical component of the RFC that the ALJ formulated

for Claimant.

### 1.    Evidence from Claimant's testimony regarding her back and knee issues.

Claimant appeared with counsel at the February 13, 2020 remand hearing before the ALJ.

(R. 1261-1290).  The ALJ directed Claimant to focus her testimony on the time period from the

fall of 2015 through her date last insured of December 31, 2015.  (R. 1265, 1267).

With respect to her knee and back issues, Claimant testified that:

> My back would get stiff.  I would have a hard time getting up.  My knees would go
> out on me while walking.  They went out on me a couple of times walking from the
> train station to my job.  My back, like I said, it would be stiff or it would be painful.
> But with my back, the lower back, it was always tender on the right side.  You touch
> it, I was in pain. . . . So that never went away.  That was constant and even now.

(R. 1271).  Claimant further testified that she was able to stand and  walk for only an hour at a

time and that she would need to rest thereafter.  (*Id.*).  Claimant could also sit for only an hour at

a time.  (R. 1272).  During the relevant  time frame, Claimant would lay down about five hours

a day on account of her pain.  (R. 1273).  Claimant could not lift heavy boxes, and testified that

that she considered ten pounds to be heavy though she could handle a gallon of milk.  (R. 1273).

Claimant had to sit down while cooking and washing dishes and could not bend over and pick

something up off the floor.  (R. 1273-74).  Claimant took Tramadol for her back and knee pain,

had acupuncture, and attended physical therapy.  (R. 1274).  These efforts helped temporarily

but did not alleviate the pain.  (R. 1275).  Claimant experienced pain at a level of ten on a ten-

point scale though the pain would be reduced to a level of five after she had physical therapy

and took her medications.  (*Id.*).

### 2.    Evidence from the state agency physicians and consultants.

On October 1, 2014, state agency consultant Dr. Liana Palacci met with Claimant and performed an internal medicine consultative examination. (R. 493-496). Dr. Palacci noted that Claimant: (1) has a past medical history of low back pain since 1993 and was diagnosed with a lumbar sprain in the past; (2) had complaints of lower back pain with no objective findings; (3) complained of pain that radiates into the right leg; (4) had pain that was exacerbated by walking and standing and alleviated by lying down; and (5) had normal range of motion in her lumbar spine and right knee and a left knee range of motion of 130/150 in flexion. (R. 493-96).

On October 31, 2014, state agency consultant Dr. Vidya Madala determined that Claimant had one severe impairment (anxiety disorder) and two non-severe impairments (obesity and essential hypertension). (R. 149). Dr. Madala further found that Claimant had the maximum sustained physical RFC to perform "heavy/very heavy" work. (R. 154). The governing regulation defines "heavy work" as work that involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds, (20 C.F.R. §404.1567(d)), and "very heavy work" as work that involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. 20 C.F.R. §404.1567(e); (R. 154-55). On June 10, 2015, state agency consultant Dr. Mina Khorshidi noted on reconsideration that an October 1, 2014 examination showed no abnormal findings except for Claimant's left knee, which had a range of motion of 130/150 in flexion. (R. 162-63). Dr. Khorshidi proposed that the prior determination of non-disability be affirmed. (*Id.*).

### 3.    Evidence from Claimant's June 29, 2015 lumbar MRI and her December 11, 2015 x-rays concerning her knees.

On June 29, 2015, Claimant underwent a lumbar MRI at the VA. (R. 885-87). Radiologist Bhanu Rangachari, M.D. summarized her findings as follows:

6

1. Severe disc space narrowing at L-5-S1. Disc bulge and right paracentral disc herniation at L5-S1 with right foraminal stenosis.

2. Facet joint arthrosis at L3-4 and L4-5 with hypertrophy of ligamentum flavum greater on the right. No significant central canal or foramen stenosis.

Primary Diagnostic Code: MINOR ABNORMALITY

(R. 887).

On December 11, 2015, Claimant had x-rays of both of her knees at the VA. (R.884-85).

With respect to Claimant's right knee, radiologist Muhammad Sheikh, M.D. reported the

following findings:

Moderate tricompartment osteoarthritic changes, most significant in the lateral tibiofemoral compartment. Trace joint effusion. No acute facture or dislocation.

Impression: As above.

Primary Diagnostic Code: MINOR ABNORMALITY

(R. 884-85). With respect to Claimant's left knee, Dr. Sheikh reported the following findings:

Moderate to severe tricompartment osteoarthritic changes, most significant in the lateral tibiofemoral compartment. No acute fracture or dislocation. Small joint effusion.

Impression: As above.

Primary Diagnostic Code: MINOR ABNORMALITY

(R. 884). Dr. Sheikh further noted that Claimant had a clinical history of pain in both knees. (R. 884-85).

### 4. Evidence from Dr. Pillay's July 1, 2016 in-person examination of Claimant.

On July 1, 2016, Veerasamy Pillay, M.D. performed an in-person examination of

Claimant and completed a public disability benefit questionnaire for the VA. (R. 1112-1124).

Among other things, Dr. Pillay found that Claimant: (1) has knee joint ankylosis in both knees;

(2) complained of constant pain behind the left knee cap that is worse on prolonged standing,

7

bending and walking; (3) has abnormal or outside of normal range flexion of the left knee, with pain and stiffness on bending, pain during the exam, and objective evidence of crepitus (a grating sound or sensation produced by friction between bone and cartilage); (4) has less movement than normal in left knee due to ankylosis and adhesion, weakened movement due to muscle or peripheral nerve injury, swelling, deformity, and interference with sitting and standing; (5) has a reduction in muscle strength and muscle atrophy in the left knee; (6) has joint instability in the left knee; and (7) degenerative or traumatic arthritis in both knees.[3] (R. 1113-14, 1116, 1119, and 1121). Dr. Pillay further found that the above findings impacted Claimant's ability to perform any type of occupational task and that she should have no lifting or carrying above ten pounds, no being on her knees, no climbing or stooping, and no physical work. (R. 1121). In the end, Dr. Pillay concluded that Claimant has a "moderate disability." (*Id.*).

### D.      The Administrative Law Judge's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits for the second time. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of May 19, 2013 through her date last insured of December 31, 2015. (R. 1237). At step two, the ALJ determined that Claimant suffered from the severe impairments of migraine headaches, degenerative-disc disease, degenerative joint disease, obesity, anxiety disorder, affective disorder, and PTSD. (*Id.*). The ALJ considered Claimant's other impairments such as hypertension but found these impairments to be non-severe. (R. 1237-38).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed

---

[3] Dr. Pillay's findings with respect to Claimant's right knee were largely normal with the exceptions noted above.

impairments, including sections 1.02 ("major dysfunction of a joint(s) due to any cause"), 1.04

("disorders of the spine"), or 11.00 ("neurological"). (R. 1238). The ALJ further found that the

Claimant's obesity did not contribute to a degree of impairment which would meet or medically

equal one of the Listings. (*Id.*). In addition, the ALJ determined that Claimant's mental

impairments, considered singly and in combination, did not meet or medically equal the criteria

of listings 12.04, 12.06, and 12.15 and further found the paragraph B and paragraph C criteria

were not satisfied. (R. 1239-40).

Before turning to step four, the ALJ determined that, Claimant had the residual functional

capacity ("RFC"):

> To perform light work as defined in 20 CFR 404.1567(b)[4] except she can
> occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds;
> occasionally stoop, kneel, crouch and crawl; can perform simple tasks and make
> simple work related decisions but not at a production rate and can have occasional
> interaction with supervisors, coworkers and the public.

(R. 1240).

In formulating the RFC, the ALJ reviewed "the claimant's allegations and found them

neither consistent with nor well supported by the objective medical findings, the claimant's

statements about her activities, her minimal medication regimen, her doctor's observations, and

the opinions of the State agency consultants." (R. 1251). The ALJ gave the opinions of the state

agency consultants "some weight" as appropriate given the medical evidence they reviewed at

the time the opinions were rendered. (*Id.*). The ALJ further noted, however, that:

> after their opinions were rendered, the medical evidence supports some diagnostic
> testing pertaining to the knees and lumbar back [namely, the December 11, 2015

---

[4] Under 20 C.F.R. §404.1567(b), "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Moreover, "light work" "'require[s] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to' the specified amount[]." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), *quoting* SSR 83-10, 1983 WL 31251, at *6 (1983).

> knee x-rays and the June 29, 2015 lumbar MRI] that support to some extent the claimant's allegations of back and knee pain. However, the conservative treatment, objective findings with non-compliance with physical therapy does not support any greater limitations than work at the light exertional level with postural limitations that accommodates the claimant's obesity and pain through the date last insured.

(*Id.*).

Based on the above RFC, the ALJ determined at step four that Claimant was unable to perform past relevant work as a secretary. (R. 1251). The ALJ then determined that as of the date last insured, Claimant was defined as a younger individual (ages 18-49), but that she subsequently changed age category to closely approaching advanced age. (*Id.*). At step five, the ALJ concluded that through the date last insured, a significant number of jobs existed in the national economy that Claimant could perform given her age, education, work experience and RFC, including the representative positions of sorter, inspector, and hand packager. (R.1251-52). As such, the ALJ found that Claimant was not disabled. (R. 1253).

## II.    STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul,* 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart,* 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

10

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, by making independent symptom evaluations, or by otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

## III.    ANALYSIS

Claimant urges this Court to reverse and remand the ALJ's decision to deny her an award of benefits, arguing that: (1) the ALJ failed to follow the law of the case when it formulated Claimant's RFC without building an accurate and logical bridge from the evidence to her RFC assessment; and (2) the ALJ's evaluation of Claimant's symptoms is riddled with multiple errors. Because Claimant's first argument has merit, the Court finds that a remand to the SSA is warranted and it will not address Claimant's additional arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations . . . we do not address DeCamp's other arguments.").[5]

---

[5] The Court's decision in this regard is not a comment on the merits of Claimant's other arguments, which Claimant is free to assert on remand.

### A. The requirements of the law of the case doctrine.

Under the law of the case doctrine, to the extent that a court decided an issue "either expressly or by necessary implication," its "decision [is] binding upon all subsequent proceedings in the same case." *Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020) (internal quotation marks omitted). Thus, the doctrine requires that an "administrative agency, on remand from a court, conform its further proceedings in the case to the principles set forth in the judicial decision." *Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009) (citation omitted); *see also Surprise*, 968 F.3d at 663 ("The law of the case doctrine thus requires a lower court to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart.") (internal quotation marks omitted). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

### B. The Court's instructions on remand regarding the assessment of Claimant's RFC.

In its May 20, 2019 decision, the Court remanded this case because the "ALJ did not explain what it was that supported her finding concerning plaintiff's ability to walk, stand, sit, push, pull, or lift" when only one physical RFC assessment was available to the ALJ. (R. 1350). Furthermore, the Court determined that the ALJ was silent as to how she decided that Claimant could walk up to six hours a day instead of "five, or three, or even one hour each day," explaining in a footnote the significance of this decision given that limiting Claimant to sedentary work could warrant a finding of disability under the guidelines due to her age. (R. 1350). The Court further found that the ALJ's "evidentiary summary [wa]s not sufficient when it le[ft] [the] court wondering how the ALJ derived a claimant's work abilities from data like x-rays and reports." (R. 1347).

To recap, "[t]he RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). In other words, the RFC "is the most an individual can work despite his or her limitations or restrictions." *Jarnutowski*, 48 F.4th at 773. The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995.) As the Seventh Circuit has recently reiterated:

> The relevant regulation, SSR 96-8p, lists seven strength functions that an ALJ must consider when assessing a claimant's RFC to work: lifting, carrying, sitting, standing, walking, pushing, and pulling. *Id.* at 34477. The regulation also requires an ALJ to describe 'how the evidence supports each conclusion [about a strength function], citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations).' *Id.* at 34478.

*Jarnutowski*, 48 F.4th at 773-74. Finally, "the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the [i]mpact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted; emphasis added); *Jarnutowski*, 48 F.4th at 774; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

**C. The ALJ failed to follow the law of the case with respect to her assessment of Claimant's RFC.**

Claimant asserts that the ALJ failed to follow the law of the case when she assessed that Claimant had the RFC to perform light work without providing, yet again, an adequate explanation as to *how* she concluded that Claimant can perform such work. The Court agrees for the reasons discussed below.

**1. The ALJ impermissibly assessed the June 2015 MRI regarding Claimant's lumbar spine and the December 2015 x-ray regarding Claimant's knees without the assistance of a medical expert.**

Claimant underwent her June 29, 2015 lumbar spine MRI and her December 11, 2015 x-rays concerning her knees *after* the state agency consultants rendered their opinions on her condition and the consultants were therefore unable to take the MRI and x-rays into consideration. Again, the ALJ referenced the MRI and the x-ray of Claimant's left knee (R. 1244, 1245), and found that although:

> diagnostic testing pertaining to the knee and lumbar back . . . support to some extent the claimant's allegations of back and knee pain. . . ., the conservative treatment, objective findings with non-compliance with physical therapy does not support any greater limitations than work at the light exertional level with postural limitations that accommodate[] the claimant's obesity and pain through the date last insured.

(R. 1251). The question is whether the ALJ erred and impermissibly played doctor by assessing the MRI and x-rays herself rather than seeking a medical opinion regarding what effect this evidence had on Claimant's RFC.

The Seventh Circuit has repeatedly held that an ALJ may not "play [] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (internal quotation marks omitted); *see also Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018); *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018); *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018); *Randy M. v. Kijakazi*, No. 20-cv-3912, 2022 WL 5183894, at *6 (N.D.Ill. Oct. 5, 2022) (ALJs "may not draw conclusions from evidence that is not open to layperson interpretation."); *Tobias B. v. Kijakazi*, No. 20-cv-2959, 2022 WL 4356857, at *6 (N.D.Ill. Sept. 20, 2022) ("The Seventh Circuit has been especially critical of ALJs' attempts to deduce the meaning of complex medical documents, such as MRI.") (citing cases). Furthermore, "the ALJ *must* seek an additional medical opinion if there is potentially decisive evidence that postdates the state agency consultant's opinion." *Kemplen v. Saul*, 844 Fed.Appx. 883, 888 (7th Cir. 2021) (emphasis added). In other words, the issue

14

"comes down to whether the new information 'changed the picture so much that the ALJ erred by . . . evaluating [herself] the significance of [the subsequent] report.'" *Id.* (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)).

In this case, the evidence provided by Claimant's MRI and left-knee x-ray is "potentially decisive." To begin, the ALJ recognized that this diagnostic evidence – unlike any that preceded it – *was* supportive of Claimant's complaints of back and knee pain. (R. 1251). It is certainly possible that a medical professional could review this evidence and find that it provides greater support for Claimant's disability claim and complaints of pain than did the ALJ (who is not a medical professional). *See, e.g., Israel v. Colvin*, 840 F.3d 432, 439-440 (7th Cir. 2016) ("Because no physician in the record has opined on whether these [MRI] results are consistent with Israel's claim of disabling pain, and because the reports are replete with technical language that does not lend itself to summary conclusions, we cannot say whether the results support or undermine Israel's claim."); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (the ALJ impermissibly played doctor by "summariz[ing] the results of the 2010 MRI in barely intelligible medical mumbo jumbo."). Indeed, Dr. Pillay's findings with respect to Claimant's left knee six months after the x-rays were taken, (*supra*, at Section I(C)(4)), led her to conclude that Claimant has a "moderate disability." (R. 1121). For these reasons, the ALJ erred by interpreting the Claimant's MRI and x-rays without seeking a medical opinion regarding this evidence and remand is required. *See, e.g., Randy M.*, 2022 WL 5183894, at *8; *Tobias B.*, 2022 WL 4356857, at *7.[6]

---

[6] The Government's argument that the ALJ need not seek another opinion from a medical expert is unpersuasive because the trio of cases it relies on are inapposite. (*See* Dckt. #21 at 10-11 (citing *Summers v. Berryhill*, 864 F.3d 523 (7th Cir. 2017); *Buckhanon ex rel. J.H. v. Astrue*, 368 Fed.Appx. 674 (7th Cir. 2010); and *Music v. Comm'r of Soc. Sec.*, No. 3:18-CV-00006-MGG, 2019 WL 1236842 (N.D.Ind. Mar. 18, 2019)). In *Summers*, the Seventh Circuit held that the ALJ had no obligation to inquire further into claimant's testimony that she had "bad days." *Summers*, 864 F.3d at 527. And, although the courts in

2. **The ALJ erred by failing to explain how the evidence supported her finding that Claimant had the lifting and carrying ability to perform light work.**

There are three sources in the record that touch on Claimant's lifting and carrying abilities. First, there is the October 31, 2014 opinion of Dr. Madala, who found that Claimant had the RFC to perform "heavy/very heavy work," which – for "heavy" work – entails lifting up to 100 pounds with frequent lifting or carrying of objects weighing up to 50 pounds and – for "very heavy" work – involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more, (20 C.F.R. §404.1567(d); 20 C.F.R. §404.1567(e)). (R. 154-55). Although the ALJ gave some weight to Dr. Madala's opinion "considering the medical evidence reviewed at the time the opinion[] was rendered,"[7] she nonetheless found that Claimant had the RFC to perform only "light" work and not "heavy/very heavy" work. (R. 1251). Aside from her citation to the 2015 MRI and x-rays concerning Claimant's lumbar spine and knees, the ALJ offers no explanation for her apparent determination that Claimant was able to perform "heavy/very heavy" work in October 2014 but was only able to perform "light" work as of December 2015.

The other two sources of evidence concerning Claimant's lifting and carrying abilities are Claimant's testimony and Dr. Pillay's July 1, 2016 opinion, and both Claimant and Dr. Pillay indicated that Claimant's lifting and carrying abilities were below the threshold required for

_____

*Buckhanon* and *Smith* held that it was the obligation of the claimants (and not the ALJs) to provide a medical expert opinion regarding medical records that were generated after the state-agency consultants had rendered their opinions, there is no indication that the records in those cases included MRIs and x-rays that were not open to a layperson's interpretation. *Buckhanon*, 368 Fed.Appx. at 679; *Music*, 2019 WL 1236842, at *6.

[7] Neither Dr. Madala nor the ALJ specified what medical evidence that Dr. Madala relied on to conclude that Claimant was capable of performing "heavy/very heavy" work.

"light work." (R. 1121, 1273-74). The ALJ did not credit this evidence. Instead, the ALJ cited

to the fact that the majority of the records generated prior to December 31, 2015 (the date last

insured) show that Claimant walked with a normal gait, had normal strength, and did not use a

cane to support her finding that Claimant could perform a limited range of light work prior to

December 31, 2015. (R. 1241, 1246). The ALJ, however, did not directly address Claimant's

lifting and carrying abilities at all,[8] let alone explain how she assessed these abilities as required

by SSR 96-p, and this error requires remand.

The fact that Claimant was able to walk effectively does not mean that she has the lifting,

carrying, and standing ability to perform light work. *Supra*, at n.2 (defining requirements of

"light work"). The facts in the Seventh Circuit's decision in *Jarnutowski* are analogous to those

in this case. Like here, the ALJ in *Jarnutowski* did not address claimant's lifting and carrying

ability but instead relied on her "ability to walk with a regular gait and without orthopedic shoes

after her surgery" to find that she was capable of performing medium work. *Jarnutowski*, 48

F.4th at 775. Just as "Janurtowski's ability to walk [wa]s not enough to show that she can

perform medium work," (*Id.*), Claimant's ability to walk is not enough to show that she is

capable of performing light work in this case.

> **3.** **The ALJ relied on several inadequate reasons for discounting the testimony of Claimant and the opinion of Dr. Pillay regarding Claimant's inability to satisfy the lifting, carrying, and standing requirements of light work.**

The Seventh Circuit further held in *Jarnutowski* that the ALJ failed to adequately explain

why she discredited evidence from the claimant and the physician who addressed claimant's

---

[8] By contrast, in her first decision, the ALJ determined that the Claimant had the RFC to be "able to lift or carry 20 pounds occasionally and 10 pounds frequently; she is able to sit for six hours, stand for six hours and walk for six hours in an eight hour workday; she is able to push and pull to the same extent that she can lift or carry…" (R. 20).

RFC and lifting abilities. *Id.* Similarly, here, the ALJ relied on a number of unpersuasive reasons for discounting the testimony of Claimant regarding her ability to lift, carry, and stand, and the opinion of Dr. Pillay regarding Claimant's inability to satisfy the lifting and carrying requirements of light work.

With respect to Claimant, the ALJ relied on Claimant's non-compliance with physical therapy as one reason why she found that the record did not support any greater limitations than work at the light exertional level. (R. 1251). In its May 10, 2019 opinion, this Court directed the ALJ to explore with greater care why Claimant was not fully compliant with her treatment and medications before discounting the severity of her symptom testimony. (R. 1357). The ALJ did question Claimant about the reason why she missed her physical therapy appointments and Claimant testified that she missed appointments because she was experiencing migraine headaches. (R. 1269, 1275).[9] The ALJ found that Claimant's migraine headaches were a "severe impairment," (R. 1237) and, as such, the migraines provide a "good reason" for Claimant's spotty attendance at the therapy appointments that in no way undermines her testimony regarding the severity of her physical symptoms. *See, e.g., Craft*, 539 F.3d at 679 ("in assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment."); *Murphy*, 759 F.3d at 816. Nonetheless, the ALJ – without explanation – once more held Claimant's "non-compliance with physical therapy" against her. (R. 1251). This was error.

---

[9] Claimant's contemporaneous medical records also reflect her explanation that she missed medical appointments due to her migraines. (*See, e.g.,* R. 796 (10/27/15 record)).

In addition, the ALJ discounted Claimant's testimony regarding her back and knee pain based, in part, on reliance on medical records that appear to be those of a different VA patient. In particular, the ALJ cited to records indicating that "just after her date last insured show the claimant reported her back pain was at zero" and that she "was not in any distress." (R. 1245 (citing to B13F/22, 24, 25) and R. 1247 (citing to B13F/22-25)).[10] Although all of these pages of the record in this range bear Claimant's name at the top, it is apparent that some of the records belong to a different VA patient.[11] One page of the records, (B13F/22), refers to male private parts which Claimant, a woman, does not have. (*See* R. 732 (stating: "GU: testicle normal size bilaterally, no masses appreciated, no genital lesions, uncircumcised, no discharge"). A second page of the records, (B13F/24), which reflects no current pain, has a materially higher blood pressure reading (193/86) than the blood pressure reading (149/72) reported twenty-one minutes earlier on the same date for the patient on the preceding page of the records (B13F/23). (*Cf.* R. 734 *with* R. 733). The latter blood pressure reading is the same as the reading on records from that same date that clearly concern Claimant. (*See* R. 728-29). Needless to say, an ALJ cannot rely on medical records belonging to another patient as basis to deny a claimant's disability claim. *See, e.g., Jonathan H.*, 2022 WL 4545269, at *3-4.

With respect to Dr. Pillay, the ALJ discounted her opinion that Claimant had a "moderate disability" that precluded her from, *inter alia*, lifting or carrying anything weighing more than ten pounds, (R. 1121), for reasons that are contrary to the factual record or are legally

---

[10] The range of records referenced as B13F/22-25 are found between page 732 and the top of page 735 of the Record.

[11] Unfortunately, this sort of problem is not unique to this case. *See, e.g., Jonathan H. v. Kijakazi*, 1:20-cv-03278-JPH-TAB, 2022 WL 4545269, at *3-4 (S.D.Ind. Sept. 28, 2022) (finding that the certified record contained medical records that did not belong to claimant and holding that the ALJ's reliance upon such records was not harmless error).

insufficient. First, the ALJ found that Dr. Pillay did not perform a physical evaluation on the date her knee and lower leg conditions disability benefits questionnaire (DBQ) was completed. (R. 1247). However, Dr. Pillay's DBQ states that: (1) an in-person examination *was* conducted, (R. 1247); (2) she performed testing to assess Claimant's muscle strength and joint stability, (R. 1116, 1118-19); (3) she "[o]bserved repetitive use" of Claimant's knees, (R. 1114-15); (4) there was "evidence of pain on weight bearing," (R. 1113-14); and (5) "[p]ain [was] noted on exam and causes functional loss," (R. 1114).

Second, the ALJ stated that Dr. Pillay's DBQ "cites no diagnostic test findings or results to support [her] opinion." (R. 1247). However, the DBQ has a section titled "diagnostic testing" in which Dr. Pillay explicitly notes that imaging studies of the knees had been performed, the results were available, and the results documented "degenerative or traumatic arthritis" in both knees. (R. 1121). Third, the ALJ noted that "the findings of sedentary work based upon left knee impairment may be consistent with exam and evaluation in July of 2016 but it is not supported in the early treatment record." (R. 1247). However, at least one portion of the "early treatment record" (namely, the December 11, 2015 left knee x-ray) contains findings that may well be consistent with Dr. Pillay's findings and require scrutiny by a medical professional. (R. 1245; *supra,* at Section III(C)(1)).

Finally, the ALJ noted that Dr. Pillay's July 1, 2016 opinion is after the December 31, 2015 date last insured. (R. 1247). However, the Seventh Circuit has recognized that "[t]here can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period." *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984); *Million v. Astrue*, 260 Fed.Appx. 918, 921-22 (7th Cir. 2008). Furthermore, the ALJ considered other evidence that post-dated the date last insured when it

weighed *against* Claimant's claim. (*See, e.g.,* R. 1246 (citing evidence from June 2016 indicating that Claimant was ambulating freely and did not qualify for a disability placard)).

In sum: for all of these reasons, the Court finds that the ALJ failed to follow the law of the case when she assessed that Claimant had the RFC to perform light work without providing an adequate explanation as to how she concluded that Claimant has the physical capabilities to perform such work. This deviation from the Court's remand order is legal error and requires a remand for further consideration. *See, e.g., Sullivan*, 490 U.S. at 886; *Payal K. v. Saul*, No. 18 C 7867, 2021 WL 1600173, at *8 (N.D.Ill. April. 23, 2021).

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the Commissioner's final decision, (Dckt. #14), is granted, and the Commissioner's request to affirm the decision, (Dckt. #21), is denied. The decision of the Commissioner is reversed, and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.


**ENTERED:  May 10, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**

21